UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                          Case No. 10-52940

TPRING ERNESTINE JOHN,                                          Chapter 7

        Debtor.                                         Judge Thomas J. Tucker
_____/

**OPINION REGARDING TRUSTEE'S OBJECTION TO DEBTOR'S
AMENDED EXEMPTIONS AND TRUSTEE'S MOTION
FOR TURNOVER OF PROPERTY OF THE ESTATE**

This case is before the Court on the Chapter 7 Trustee's objection to the Debtor's amended exemptions, and on the Trustee's motion entitled "Trustee's Motion for Turnover of Property of the Estate."[1] The Court held a hearing on September 1, 2010, and then held an evidentiary hearing on October 4, 2010. For the reasons stated in this opinion, the Court finds for the Debtor on both matters. The Court will overrule the Trustee's objection to exemptions and deny the Trustee's turnover motion.

**I. Background**

    **A. Course of proceedings**

Debtor filed her voluntary Chapter 7 petition in this case on April 20, 2010. Debtor's Schedule B listed one vehicle, a 2005 Mercedes Benz ML350, which Debtor valued at $9,600.00. Debtor's Schedule C claimed federal exemptions in this vehicle, in the total amount of $9,600.00. The exemptions claimed were under 11 U.S.C. §§ 522(d)(2) ($3,450.00) and 522(d)(5) ($6,150.00).[2]

---

[1] Docket ## 24 and 17, respectively.

[2] Docket # 1. Section 522(d)(2) exempts "[t]he debtor's interest, not to exceed $3,450 in value, in one motor vehicle." Section 522(d)(5) permits an exemption in "[t]he debtor's aggregate interest in

The Chapter 7 trustee, George Dakmak, believed that Debtor had undervalued the Mercedes in Schedule B. Before he conducted the § 341 first meeting of creditors, he reviewed values for the vehicle in two published sources. Based on that review, the Trustee believed that the Debtor's Schedule B had undervalued the Mercedes by about $4,400.00.[3] At the § 341 meeting on June 2, 2010, the Trustee asked Debtor where she got her claimed value of $9,600.00 for the Mercedes. According to the Trustee, Debtor's response was to look at her attorney, who then said that "his file" showed a value of $13,400.00 to $14,900.00, and that he did not know why the value was listed as $9,600.00 in Schedule B.[4]

This discussion at the § 341 meeting reinforced the Trustee's belief that the Mercedes had a value substantially greater than the Debtor's claimed $9,600.00 exemption amount. On June 24, 2010, just over three weeks after the § 341 meeting, and with Debtor not having amended her Schedule B or C, the Trustee filed his turnover motion. That motion sought an order requiring Debtor to turn the Mercedes over to the Trustee, so he could sell it and realize its nonexempt value for the bankruptcy estate.[5]

In reaction to the Trustee's turnover motion, Debtor filed amended Schedules B and C, on

---

any property, not to exceed in value $1,150 plus up to $10,825 of any unused amount of the exemption provided under" § 522(d)(1) – the $21,625 homestead exemption.

[3] Testimony of George P. Dakmak, Trustee (cited below as "Dakmak").

[4] *Id.* No transcript of the § 341 meeting has been filed, nor was one introduced into evidence at the evidentiary hearing. Rather, Mr. Dakmak testified at the evidentiary hearing about what was stated during the § 341 meeting. The Debtor did not contest Mr. Dakmak's account of what transpired at the § 341 meeting.

[5] Docket # 17.

June 29, 2010.[6]  The amended Schedule B increased the Debtor's claimed value of the Mercedes, to $11,425.00.  And it stated in the description of the vehicle, for the first time, that it was "purchased in June, 2008 with buyout funds."

Debtor's amended Schedule C increased Debtor's claimed exemptions in the Mercedes, to a total that matched the increased value amount, $11,425.00.  This was accomplished by Debtor's maintaining her claimed $3,450.00 exemption under 11 U.S.C. § 522(d)(2), and increasing the amount of her claimed exemption under 11 U.S.C. § 522(d)(5) from the original $6,150.00 to $7,975.00.[7]  In addition, Debtor added a new, third exemption claim for the Mercedes, under 11 U.S.C. § 522(d)(11)(E), for a stated exemption value of "100%."[8]  Like the amended Schedule B, the amended Schedule C added to the description of the Mercedes, for the first time, that it was "purchased in June, 2008 with buyout funds."

Debtor's statement in her amended Schedules B and C to having purchased the Mercedes with "buyout funds" refers to the following facts, which are now undisputed by the Trustee. Debtor agreed to terminate her employment with Chrysler, LLC in 2008, in exchange for a lump sum payment, under a program called "Enhanced Voluntary Termination of Employment Program (EVTEP)."  Under this program, Debtor received a lump sum payment from Chrysler

---

[6] Docket # 18.

[7] This $7,975 is the maximum exemption amount that Debtor can apply to the Mercedes under § 522(d)(5).  Debtor claims no homestead exemption under § 522(d)(1), so she has the full amount of the $11,975 maximum exemption under § 522(d)(5).  Debtor has used this entire amount, however, by claiming a $3,000 exemption in her checking account, a $1,000 exemption in her right to a tax refund, and the $7,975 exemption in the Mercedes.  Docket # 18 (amended Schedule C).

[8] Section 522(d)(11)(E) permits an exemption in "[t]he debtor's right to receive, or property that is traceable to . . . a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

3

on May 8, 2008. The gross amount of this payment was $103,500.40; Debtor received a net payment, after tax withholding, of $89,578.25. Debtor deposited $87,483.79 of this payment into her credit union checking account on May 8, 2008.[9] On May 12, 2008, Debtor used some of these funds to buy the Mercedes, paying $20,683.00. Debtor obtained title to the Mercedes on May 21, 2008. The Mercedes was not and is not encumbered by any liens.[10]

The evidence establishes that until Debtor filed her amended Schedules B and C, five days after the Trustee filed his turnover motion, neither Debtor nor her counsel disclosed to the Trustee in any way, any of the following: (1) that Debtor had purchased the Mercedes with proceeds of an employer buyout; (2) that Debtor had received any sort of employer buyout; or (3) that Debtor could or would claim an exemption for the Mercedes under § 522(d)(11)(E), based on Debtor's use of employer buyout funds to buy the car.[11]

**B. The Trustee's objection to Debtor's § 522(d)(11)(E) exemption**

The Trustee timely filed an objection to the Debtor's amended exemptions.[12] The objection sought disallowance of Debtor's claimed exemption under § 522(d)(11)(E) in its entirety, for four reasons. First, the Trustee argued that Debtor had not shown that she bought the Mercedes with employer buyout funds as claimed. Second, the Trustee argued that even if Debtor could show this, the buyout funds were not "a payment in compensation of loss of future earnings of the debtor" within the meaning of § 522(d)(11)(E). Third, the Trustee argued that the

---

[9] Evid. Hearing Exs. G, H, and F; testimony of the Debtor, TPring John (cited below as "John").

[10] Exs. A-E, and F; John.

[11] Dakmak.

[12] Docket # 24.

4

Mercedes was a "luxury car" and therefore was not "reasonably necessary for the support of the debtor and any dependent of the debtor" within the meaning of § 522(d)(11)(E). Fourth and finally, the Trustee argued that Debtor's amendment of her exemptions, to add § 522(d)(11)(E), should be disallowed because Debtor's delay in claiming this exemption was prejudicial to creditors of the bankruptcy estate.[13]

During the evidentiary hearing, the Trustee abandoned the first two of these arguments, but continued to press the third and fourth arguments.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and over these contested matters under 28 U.S.C. §§ 1334(b), 157(a) and 157 (b)(1), and Local Rule 83.50(a) (E.D. Mich.). These contested matters are core proceedings under 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(2)(E).

## III. Discussion

### A. The Trustee's arguments

The Trustee does not dispute that Debtor has a valid exemption in the Mercedes in the amount of $11,425.00, based on §§ 522(d)(2) and 522(d)(5). Believing that the Mercedes may be worth substantially more than $11,425.00, however, the Trustee asks the Court to disallow Debtor's claimed "100%" exemption under § 522(d)(11)(E), and to order Debtor to turn the vehicle over to the Trustee so he can sell it. The Trustee then would use the sale proceeds to pay Debtor her $11,425.00 exemption amount, and retain the remainder for the bankruptcy estate.

The Trustee bears the burden of proving, by a preponderance of the evidence, that

---

[13] Docket # 24, Trustee's Br. at 3 n.2.

Debtor's § 522(d)(11)(E) exemption is not "properly claimed." *See* Fed.R.Bankr.P. 4003(c); *In re Opra*, 365 B.R. 728, 743 (Bankr. E.D. Mich. 2007).

As noted above, the Trustee has abandoned two of the arguments he made initially — that Debtor had not shown that she bought the Mercedes with employer buyout funds as claimed; and that any such buyout funds were not "a payment in compensation of loss of future earnings of the debtor" within the meaning of § 522(d)(11)(E). As to the first of these arguments, the Debtor proved at the evidentiary hearing that she bought the Mercedes with buyout funds,[14] and the Trustee no longer disputes this.

As the Trustee now concedes, the second of his arguments is foreclosed by a recent decision of the United States Court of Appeals for the Sixth Circuit, *Gold v. Lewis (In re Lewis)*, 387 Fed.Appx. 530, No. 09-1777, 2010 WL 2813328 (6th Cir. July 12, 2010). The *Lewis* case concerned a Chapter 7 debtor's rights under a Ford employee-buyout program similar to the Chrysler buyout program in this case. In *Lewis*, the Sixth Circuit held that the Debtor could exempt her buyout rights under § 522(d)(11)(E), because those rights were "a payment in compensation of loss of future earnings" within the unambiguous meaning of § 522(d)(11)(E).[15] *Lewis*, 387 Fed. Appx. 530, 532-33, 2010 WL 2813328, at *2-3. This was so, the Court held, because "[b]y agreeing to the terms and conditions of the EDOPP, Lewis received a payment in exchange for waiving her right to all future earnings with Ford." *Lewis*, 387 Fed. Appx. 530, 533, 2010 WL 2813328, at *3.

---

[14] *See* discussion in Part I-A of this opinion.

[15] In *Lewis*, the Chapter 7 trustee argued that § 522(d)(11)(E) requires the debtor to have suffered a loss of earning capacity due to a bodily injury. The Sixth Circuit rejected that argument.

6

### B. The Trustee's argument that § 522(d)(11)(E) does not apply to Debtor's vehicle

The first of the Trustee's two remaining arguments is that the Mercedes is not "reasonably necessary for the support of the debtor and any dependent of the debtor" within the meaning of § 522(d)(11)(E). This was not an issue in the *Lewis* case and the Sixth Circuit did not discuss it — in *Lewis*, the trustee did not dispute that the debtor's employer-buyout rights were reasonably necessary for the debtor's support.

In making this argument, the Trustee concedes that the Debtor does need a vehicle for her support and the support of her two minor daughters. The Trustee acknowledges that Debtor needs a car to get to work, and for other basic transportation needs. But, Trustee argues, Debtor does not need *this* vehicle, or a vehicle that has the value of the Mercedes, for her support. Trustee argues that the Mercedes is a "luxury vehicle." He argues further that Debtor can use her $11,425 exemption amount, and if necessary, her current employment income, to buy a replacement vehicle, presumably of lesser value than the Mercedes. This, Trustee contends, is all that is "reasonably necessary" for the support of Debtor and her two children.

The determination of what is "reasonably necessary," in this context,

> is necessarily fact sensitive and courts may look, to the extent relevant, to criteria such as:
>
> (1) debtor's present and anticipated living expenses;
> (2) debtor's present and anticipated income from all sources;
> (3) the age of the debtor and his or her dependents;
> (4) the health of debtor and his or her dependents;
> (5) debtor's ability to earn a living;
> (6) debtor's job skills, training and education;
> (7) debtor's other assets, including exempt assets;
> (8) the liquidity of these other assets;
> (9) debtor's ability to save for retirement;
> (10) the special needs of the debtor and his or her dependents; and
> (11) debtor's continuing financial obligations, e.g., alimony or support payments.

7

*In re Jackson*, 376 B.R. 75, 79-80 (Bankr. D. Conn. 2007)(citation omitted), *aff'd* 394 B.R. 8 (D. Conn. 2008), *aff'd* 593 F.3d 171 (2d Cir. 2010).

### C. The Trustee's argument that Debtor waited too long to claim the § 522(d)(11)(E) exemption

The Trustee's second argument is that the Debtor's delay in claiming the § 522(d)(11)(E) exemption was prejudicial to creditors. Debtor did not claim this exemption in her initial Schedule C, but rather she waited until almost four weeks after the Trustee raised questions about the value of the Mercedes at the § 341 meeting to first claim this exemption, by filing an amended Schedule C. Moreover, Debtor waited until after the Trustee incurred the expense of preparing and filing his turnover motion before claiming the § 522(d)(11)(E) exemption. Debtor certainly could have acted much sooner to claim this exemption, and had she done so, the Trustee might have avoided the expense of filing a turnover motion.

The legal theory behind the Trustee's "prejudice" argument is supported by case law. The Sixth Circuit has held that a Debtor's right to amend her exemptions under Fed.R.Bankr.P. 1009(a)[16] may be denied "where the debtor has acted in bad faith or where property has been concealed." *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984); *see also Opra*, 365 B.R. at 743. In addition, however, cases have held that even in the absence of bad faith, a debtor's right to add a new claim of exemption by amending Schedule C may be denied, or limited, where the debtor's delay in claiming an exemption has caused prejudice to the Chapter 7 trustee or to creditors. *See, e.g., In re Daniels*, 270 B.R. 417, 425-28 (Bankr. E.D. Mich. 2001)(amended exemption denied based on the doctrine of laches)(citing cases); *Arnold v. Gill (In re Arnold)*,

---

[16] Rule 1009(a) states in pertinent part that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."

8

252 B.R. 778, 789 (B.A.P. 9th Cir. 2000)(amended exemption allowed, but conditioned on the payment of fees incurred by trustee's counsel because of debtor's delay in claiming the exemption)(citing cases). The type of prejudice that permits the Court to deny or limit an amended exemption has been described in this way:

> Mere delay in filing an amendment, or the fact that an amendment if allowed will result in the exemption being granted, are not sufficient to show prejudice. . . . [P]rejudice may be established by showing harm to the litigating posture of parties in interest. If the parties would have taken different actions or asserted different positions had the exemption been claimed earlier, and the interests of those parties are detrimentally affected by the timing of the amendment, then the prejudice is sufficient to deny amendment. Moreover, an amendment is prejudicial if it impairs a trustee in the diligent administration of the estate.

*Daniels*, 270 B.R. at 426 (quoting *In re Talmo*, 185 B.R. 637, 645 (Bankr. S.D. Fla. 1995)).

**D. A threshold issue — whether the value of the vehicle is high enough to make the Trustee's objection to the § 522(d)(11)(E) exemption matter**

Before further considering the Trustee's two grounds for objection, the Court must first consider a threshold issue — namely, whether Debtor's Mercedes is worth more than the total $11,425 exemption amount under §§ 522(d)(2) and 522(d)(5). The Trustee does not dispute this total exemption amount under these Code sections. If the Mercedes is not worth more than $11,425, then it does not matter whether Debtor's additional claim of exemption under § 522(d)(11)(E) is valid or not. In that event, the Trustee's objection to the Debtor's claim of exemption under § 522(d)(11)(E) is moot.

The evidence presented by the parties of the value of the Mercedes is as follows. As of the petition date, the Mercedes was about five years old (being a 2005 model). Two years before she filed bankruptcy, in May 2008, Debtor paid $20,683 at an auction for the vehicle. At that

9

time, however, the vehicle's mileage was only 55,678 miles.[17] The evidence indicates that the vehicle's mileage now is about 115,000 miles.[18]

At the evidentiary hearing, Debtor was asked how she came up with the $9,600 value that she listed for the vehicle in her original Schedule B. Debtor testified that she researched the value of the car online, on the Carfax website.[19] This testimony was vague, however, and Debtor did not corroborate her testimony by presenting any printout of information from Carfax. Nor did she ever give her attorney a printout of anything she found online from Carfax.[20]

Debtor's testimony at the evidentiary hearing is at odds with her earlier testimony and behavior at the § 341 hearing, as recounted by the Trustee. As noted above, when asked at the § 341 meeting on June 2, 2010 where she got her claimed value of $9,600.00 for the Mercedes, Debtor's response was simply to look at her attorney, who then said that "his file" showed a value of $13,400.00 to $14,900.00, and that he did not know why the value was listed as $9,600.00 in Schedule B. There is no evidence that Debtor contradicted, supplemented, or explained this statement by her attorney at the § 341 meeting. Nor did she say anything at that time about having researched the value of the Mercedes online. The Court finds that Debtor's testimony about how she came up with her original $9,600 valuation of the Mercedes is not credible.

---

[17] See Ex. A (Certificate of Title issued May 21, 2008, listing "Actual Mileage" as 55,678).

[18] See Ex. I (listing vehicle mileage as 115,013 miles); Ex. J (listing vehicle mileage under "Vehicle Highlights" as 115,623).

[19] Debtor may have been referring to the website maintained by Carfax, Inc. (www.carfax.com), but she was not this specific in her testimony.

[20] John.

The Debtor's original Schedule B valuation of $9,600 is, of course, undermined by the Debtor's later amendment of Schedule B, which valued the vehicle at $11,425. And Debor's second position on value, taken in her amended Schedule B, is itself rather suspect. Debtor's amended $11,425 value happens to equal exactly the maximum total amount of the exemptions that Debtor can take using §§ 522(d)(2) and 522(d)(5). This seems more than mere coincidence. Rather, Debtor manipulated the Schedule B value of the vehicle to make sure it fit within the maximum exemption amount under §§ 522(d)(2) and 522(d)(5). This, in turn, appears to have been designed by Debtor to try to avoid a dispute with the Trustee over the § 522(d)(11)(E) exemption.

At the evidentiary hearing, however, Debtor presented additional evidence of value that is more credible. First, Debtor presented a printout of an online Kelley Blue Book value for the Mercedes. That document listed the "Blue Book Private Party Value"[21] for the vehicle, depending on the vehicle's condition, as follows:

| Excellent | $12,690 |
| Good | $11,740 |
| Fair | $10,190[22] |

Referring to this exhibit, the Trustee testified on cross examination, rather vaguely, that the condition of Debtor's Mercedes was "good to excellent."[23] On the other hand, the Debtor

---

[21] Kelley Blue Book defines "Private Party Value" to mean "[t]he amount a buyer can expect to pay when buying a used car from a private party." *See* http://www.kbb.com/used-cars/mercedes_benz/ml_class/2005?r=2903422342102705.

[22] Ex. J.

[23] Dakmak. The Trustee also testified that he had pictures taken of the vehicle, and that from these pictures (which were not introduced into evidence) the vehicle appeared to him to be a "nice, clean car." *Id.*

11

testified, also rather vaguely, that she had some unspecified "complications" with the Mercedes, affecting its value.

In addition to the Kelley Blue Book evidence, Debtor testified that she obtained an appraisal from a Mercedes dealership in Indiana, where she now lives, on September 13, 2010. The dealer personally inspected the vehicle, and appraised its value as $8,000.[24] The dealer's written appraisal, in the form of an e-mail to Debtor, states the following about the condition of the Mercedes:

> DF door on front bottom edge near the [fender] has some rust spots. Ding on the DF [fender]. Paint peal on the front hood/bumper. Needs tires. Center leather consol & driver seat a little worn. Carpet stained. PR qtr panel scratch that has touch-up.[25]

The Trustee did not present any appraisal or any other expert testimony about the value of the Mercedes. He testified, however, that before he conducted the § 341 first meeting of creditors, he reviewed values for the vehicle in two published sources. He reviewed what he described only as "my black book," which showed a "wholesale" value of $12,100 to $14,500, and a "retail" value of $14,750 to $17,225.[26] He also reviewed what he described only as a "blue

---

[24] John; Ex. I.

[25] Ex. I.

[26] These values may have been supported somewhat by the evidence, described above, that Debtor's attorney said at the § 341 meeting that "his file" showed a value of $13,400.00 to $14,900.00 for the Mercedes. But the Court concludes that it cannot consider that evidence for the purpose of determining the value of the Mercedes. When the Trustee testified about what Debtor's attorney said in the § 341 meeting, Debtor objected, arguing that this was inadmissible hearsay. As part of his response to that objection, Trustee's counsel stated that he was not offering this testimony for the purpose of showing the actual value of the Mercedes. Based in part on this statement by Trustee's counsel, the Court overruled the Debtor's objection. Under these circumstances, the Court will not consider the statement made by Debtor's attorney at the § 341 meeting as evidence of the value of the Mercedes.

book" on the internet, which listed values in the same range as his other source. The Trustee did not introduce copies of the two sources he consulted, and they are not otherwise in the record. Nor did the Trustee identify these sources with sufficient detail to enable the Court to review them. And the Trustee did not explain how the values he found in his research can be reconciled with much lower values shown by the dealer appraisal and the Kelley Blue Book document presented by Debtor.

The foregoing is all of the evidence presented by the parties of the value of the Mercedes. Based on the evidence presented, the Court finds that the value of the Mercedes was *not* greater than $11,425, at the time Debtor filed her bankruptcy petition or at any later date. The Trustee did not present any persuasive evidence of a value greater than $11,425. The credible evidence presented by the Debtor, including the $8,000 dealer appraisal, the Kelley Blue Book evidence, and the evidence about the condition of the vehicle contained in the dealer's e-mail, establishes that more probably than not the vehicle is worth less than $11,425, and that it may be worth as little as $8,000.

Thus, the Trustee's objection to Debtor's § 522(d)(11)(E) exemption does not matter — it is moot, and therefore must be overruled.

### E. The Trustee's turnover motion

Debtor's undisputed $11,425 exemption in the Mercedes, under Code §§ 522(d)(2) and 522(d)(5), fully exempts the vehicle. It follows that the Trustee may not sell the vehicle or deprive the Debtor of her full possession and use of the vehicle. Under 11 U.S.C. § 542(a), then, the Trustee is not entitled to an order requiring the Debtor to turn the vehicle over to him. *See White v. Brown (In re White)*, 389 B.R. 693, 699 (B.A.P. 9th Cir. 2008)(turnover order

"necessarily subsume[s] a determination that the [property] is nonexempt property of the estate").

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter an order overruling the Trustee's objection to exemption as moot, and denying the Trustee's turnover motion.

**Signed on January 18, 2011**          **/s/ Thomas J. Tucker**
                                         **Thomas J. Tucker**
                                         **United States Bankruptcy Judge**